UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

MARTIN WALSH,

                                Plaintiff,

       -against-

CITY OF NEW YORK, individually and in their official
capacities as New York City police officers, KEVON
SAMPLE, OLIVER LIEBOWITZ, JASON LUNSFORD,
JHONNY MILFORT, CATHERINE DORAN, MICHAEL
CLARK and JOHN or JANE DOES 1-10,

                              Defendants.

-------------------------------------------------------------------------X

**COMPLAINT**

<u>Demand for Trial by Jury</u>

ECF CASE
Docket No. 19-cv-09238

       Plaintiff, Martin Walsh, by and through the undersigned attorneys, Sim & DePaola, LLP, for his complaint against the Defendants, City of New York, individually and in their official capacities as New York City police officers, Kevon Sample, Oliver Liebowitz, Jason Lunsford, Jhonny Milfort, Catherine Doran, Michael Clark and John or Jane Does 1-10, alleges and states as follows:

## PRELIMINARY STATEMENT

1.     This is a civil rights action, in which plaintiff seeks relief, vis-à-vis 42 U.S.C. §§ 1981, 1983, 1985, 1986 and 1988, the common law of the State of New York, in addition to the self-executing clauses or implied private causes of action of the New York State Constitution, for the violations of his civil rights, as guaranteed and protected by the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States, as well as the Laws and Constitution of the State of New York.

2.     The following claims arise from a June 17, 2018 incident, in which defendants, acting under color of state law, unlawfully stopped, questioned, searched, arrested and detained Mr.

Walsh, in the vicinity of the northeast corner of 2nd Avenue and 86th Street, within the County, City and State of New York. Mr. Walsh was subsequently charged with Assault in the Third Degree and other related offenses. As a result, Mr. Walsh was deprived of his liberty and suffered various physical, emotional and psychological injuries. Mr. Walsh was wrongfully detained for approximately nine (9) hours and maliciously prosecuted from the date of his criminal court arraignment, until the Hon. H. Jacob Moses, then a judge of the Criminal Court of the City of New York, ordered the unconditional dismissal of all criminal charges stemming from the aforementioned June 17, 2018 arrest of Mr. Walsh.

3.       Plaintiff seeks monetary damages (compensatory and punitive) against defendants, an award of costs and reasonable attorneys' fees, and such other and further relief as this Court may deem just and proper.

## JURISDICTION

4.       This action arises under the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1981, 1983, 1985, 1986 and 1988, as well as the Laws and Constitution of the State of New York.

5.       The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of supplemental jurisdiction.

## VENUE

6.       Venue is properly laid within the Southern District of New York, as defendant, City of New York, is located within and a substantial part of the events giving rise to the claims occurred within the boundaries of the Southern District. 28 U.S.C. § 1391 (b) and (c).

## **PARTIES**

7.      Plaintiff, Martin Walsh ("Mr. Walsh"), is a White male, who resides in the County, City and State of New York.

8.      Defendant, City of New York ("City"), is a municipal corporation organized under the laws of the State of New York.

9.      At all times relevant hereto, defendant City, acting through the New York City Police Department ("NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, screening, hiring, training, supervision, discipline, retention and conduct of all NYPD personnel, including police officers, detectives, sergeants, lieutenants and other supervisory officers or officials, as well as the individually named NYPD defendants herein.

10.      In addition, at all times here relevant, defendant, City, was responsible for enforcing the rules or regulations of the NYPD, and for ensuring that the NYPD personnel obey the laws and constitutions of the United States and the State of New York.

11.      Defendant, Kevon Sample ("Sample"), was, at all times here relevant, a police officer or police lieutenant employed by the NYPD and, as such, was acting in the capacity of an agent, servant and employee of the defendant, City of New York. Defendant Sample was, at the times relevant herein, a police officer or police lieutenant, under Tax Reg. No. 935679, assigned to 19th NYPD Precinct, located at 153 East 67th Street, New York, New York 10065. Defendant Sample is being sued in his individual and official capacities.

12.      Defendant, Oliver Liebowitz ("Liebowitz"), was, at all times here relevant, a police officer employed by the NYPD and, as such, was acting in the capacity of an agent, servant and employee of the defendant, City of New York. Defendant Liebowitz was, at the times relevant

herein, a police officer, under Shield No. 21492 Tax Reg. No. 959796, assigned to 19th NYPD

Precinct, located at 153 East 67th Street, New York, New York 10065. Upon information and

belief, defendant Liebowitz is presently assigned to the 113th NYPD Precinct, located at 167-02

Baisley Boulevard, Jamaica, New York 11434. Defendant Liebowitz is being sued in his

individual and official capacities.

13.     Defendant, Jason Lunsford ("Lunsford"), was, at all times here relevant, a police officer

police lieutenant employed by the NYPD and, as such, was acting in the capacity of an agent,

servant and employee of the defendant, City of New York. Defendant Lunsford was, at the times

relevant herein, a police officer or police lieutenant, under Tax Reg. No. 931798, assigned to 75th

NYPD Precinct, located at 1000 Sutter Avenue, Brooklyn, New York 11208. Upon information

and belief, defendant Lunsford is presently assigned to the NYPD's Counterterrorism Unit,

Division or Bureau, located at One Police Plaza, Room 1109, New York, New York 10038.

Defendant Lunsford is being sued in his individual and official capacities.

14.     Defendant, Jhonny Milfort ("Milfort"), was, at all times here relevant, a police officer

employed by the NYPD and, as such, was acting in the capacity of an agent, servant and

employee of the defendant, City of New York. Defendant Milfort was, at the times relevant

herein, a police officer, under Shield No. 935 Tax Reg. No. 954738, assigned to 75th NYPD

Precinct, located at 1000 Sutter Avenue, Brooklyn, New York 11208. Defendant Milfort is being

sued in his individual and official capacities.

15.     Defendant, Catherine Doran ("Doran"), was, at all times here relevant, a police officer or

police sergeant employed by the NYPD and, as such, was acting in the capacity of an agent,

servant and employee of the defendant, City of New York. Defendant Doran was, at the times

relevant herein, a police officer or police sergeant, under Tax Reg. No. 934116, assigned to a

NYPD precinct or command. Upon information and belief, defendant Doran is presently assigned to the NYPD Office of Management Analysis and Planning, located at One Police Plaza, New York, New York 10038. Defendant Doran is being sued in her individual and official capacities.

16.     Defendant, Michael Clark ("Clark"), was, at all times here relevant, a police officer employed by the NYPD and, as such, was acting in the capacity of an agent, servant and employee of the defendant, City of New York. Defendant Clark was, at the times relevant herein, a police officer, under Shield No. 5945 and Tax Reg. No. 905960, assigned to 18th NYPD Precinct, also known as the Midtown North Precinct Command, located at 306 West 54th Street, New York, New York 10019. Upon information and belief, defendant Clark is presently unassigned due to his retirement, resignation or termination from the NYPD. Defendant Clark is being sued in his individual and official capacities.

17.     At all relevant times, defendants John or Jane Does 1 through 10 were police officers, detectives, supervisors, policymakers or officials employed by the NYPD or City of New York. At this time, Plaintiff does not know the true names or tax registry numbers of defendants, John or Jane Does 1 through 10, as such knowledge is within the exclusive possession of defendants.

18.     At all relevant times herein, defendants John or Jane Does 1 through 10 were acting as agents, servants and employees of the City of New York or the NYPD. Defendants John or Jane Doe 1 through 10 are being sued in their individual and official capacities.

19.     At all relevant times herein, defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City or State of New York.

20.    Plaintiff has complied with all conditions precedent prior to commencing the instant action.

## **FACTUAL CHARGES**

21.    On, or about, June 17, 2018, at approximately 2:00 p.m., Mr. Walsh was walking in the vicinity of the Northwest corner of 1st Avenue and 87th Street, in the County, City and State of New York.

22.    At said date, time and location, Mr. Walsh was lawfully within the crosswalk, when he was almost struck by a bicyclist, who illegally and dangerously sped through a red stop-light.

23.    Mr. Walsh then informed the bicyclist that Mr. Walsh had the right of way.

24.    The bicyclist, later identified as Francisco Bruno, Jr. ("Mr. Bruno", then brandished a metal chain in a threatening manner, while proceeding to utter various profanity laced threats toward Mr. Walsh.

25.    Mr. Walsh proceeded to walk towards his intended destination, when Mr. Bruno cycled onto the sidewalk, disembarked from his bicycle and blocked Mr. Walsh's path.

26.    Mr. Walsh, fearful for his safety, proceeded to walk away from Mr. Bruno by walking toward 2nd Avenue.

27.    As Mr. Walsh was walking toward 2nd Avenue, he dialed for emergency assistance by calling "911."

28.    Mr. Walsh informed the emergency operator that he was an off-duty court officer in need of assistance, because he was being menaced and harassed by a bicyclist, as required.

29.    Less than five (5) minutes after Mr. Walsh dialed "911," two NYPD officers at the scene, including defendants Liebowitz and John Doe 1.

30.    Mr. Walsh informed defendants, Liebowitz and John Doe 1, about Mr. Bruno's unlawful actions and proceeded to point Mr. Bruno out to them.

31.    Defendant Liebowitz then proceeded to question Mr. Bruno.

32.    As defendant Liebowitz was speaking with Mr. Bruno, defendant Sample arrived.

33.    After speaking with Mr. Bruno for less than five (5) minutes, defendant Sample approached Mr. Walsh.

34.    Defendant Sample instructed Mr. Walsh to shake hands with Mr. Bruno and to "forget about this."

35.    Mr. Walsh refused and replied that his employment as a court officer requires him file a formal report anytime he dials "911."

36.    Defendant Sample then became visibly irate, stating "We'll see about that" and directed Mr. Walsh not to leave the scene.

37.    Defendants, Sample and Liebowitz, then walked away from Mr. Walsh.

38.    Approximately five (5) to ten (10) minutes later, defendants, Sample and Liebowitz, returned to speak with Mr. Walsh.

39.    Defendant Sample then informed Mr. Walsh that he had conducted "further investigation," which yielded an additional witness to the incident.

40.    Defendant Sample further informed Mr. Walsh that he was going to be arrested, because of said investigation and the unknown information alleged by defendant Sample to have been provided by the unknown witness.

41.    At the direction of defendant Sample, Mr. Walsh was then rear handcuffed and arrested by defendants, Liebowitz and John Doe 1, placed in a police vehicle and transported to the 19th precinct of the NYPD.

42.    Mr. Walsh informed defendants, including Liebowitz and John Doe 1, that the handcuffs were affixed too tightly, causing him to suffer substantial pain and discomfort.

43.    Mr. Walsh requested that the handcuffs be loosened, but was ignored for approximately twenty (20) minutes.

44.    Upon his arrival at the 19th precinct, Mr. Walsh was searched, questioned, photographed and fingerprinted.

45.    Mr. Walsh inquired to defendant Liebowitz about the status of his cross-complaint against Mr. Bruno, but was ignored.

46.    At approximately 8:30 p.m., Mr. Walsh was eventually transported to New York County Central Booking.

47.    At Central Booking, Mr. Walsh was subjected to additional searches and confined to various cells with poor sanitary conditions and other accused criminals.

48.    At approximately 11:00 p.m., Mr. Walsh was arraigned and released on his own recognizance.

49.    Upon his release from custody, Mr. Walsh attempted to retrieve his property, which was unlawfully searched and seized, pursuant to an illegal search of his person, including the keys to his residence, but was unable to do so, until approximately 1:30 a.m. the following morning.

50.    Mr. Walsh, therefore, was rendered unable to return to his residence, until approximately 2:00 a.m. the morning following his unlawful arrest.

51.    Mr. Walsh was compelled to return to court, approximately three (3) times, to contest the false charges levied against him, including two counts of Assault in the Third Degree, Aggravated Harassment in the Second Degree, Attempted Assault in the Third Degree and Harassment in the Second Degree.

52.     On December 19, 2018, all criminal charges against Mr. Walsh were dismissed by the Hon. H. Moses, then a judge of the Criminal Court of the City of New York, County of New York.

53.     Defendants, including Sample, Liebowitz and John Doe 1, did not possess a valid, judicially authorized arrest warrant for Mr. Walsh.

54.     Defendants, including Sample, Liebowitz and John Doe 1, did not possess probable cause or other justification for the arrest or seizure Mr. Walsh's person.

55.     Defendants, including Sample, Liebowitz and John Doe 1, never observed Mr. Walsh commit any crimes of violations of the law.

56.     Defendants, including Sample, Liebowitz and John Doe 1, were never informed by any witnesses, including Mr. Bruno or the unknown witness, that Mr. Walsh committed any crimes or violations of the law.

57.     Defendants, including Sample, Liebowitz and John Doe 1, completely fabricated the existence of the second, unknown witness, as well the information allegedly provided by said unknown witness to justify the arrest and subsequent criminal prosecution of Mr. Walsh.

58.     Defendants, including Sample, Liebowitz and John Doe 1, conspired with defendants, Lunsford, Milfort, Doran and Clark, to arrest and cause a criminal prosecution to be initiated against Mr. Walsh, in unlawful retaliation for Mr. Walsh's prior federal lawsuit that was commenced within the Southern District of New York, against defendants, City, Lunsford, Milfort, Doran and Clark, under Docket No. 14-cv-07108 (AKH).

59.     Mr. Walsh's prior federal lawsuit against defendants, City, Lunsford, Milfort, Doran and Clark, terminated with a jury verdict in favor of Mr. Walsh.

60.     Defendants, Lunsford and Milfort, were personally known to defendant Sample at the time of Mr. Walsh's arrest, due to their prior contemporaneous assignments to the 75th NYPD Precinct.

61.     Prior to falsely arresting Mr. Walsh, defendant Sample was fully aware that Mr. Walsh had initiated a federal lawsuit against defendants, City, Lunsford, Milfort, Doran and Clark, and that said lawsuit resulted in a jury verdict and substantial monetary judgment in favor of Mr. Walsh.

62.     Defendant Sample was also fully aware that an appeal of said verdict and judgment by defendants was then pending before the Second Circuit Court of Appeals, under Docket No. 17-cv-02432.

63.     Defendant Sample, therefore, fabricated false evidence and ordered the arrest and the initiation of the criminal prosecution against Mr. Walsh in retaliation for his prior successful lawsuit against defendants, including the City of New York, Lunsford, Milfort, Doran and Clark.

64.     Defendant Sample did not order the arrest or the initiation of the criminal prosecution against Mr. Walsh, due to the presence of probable cause or for the purpose of obtaining a criminal conviction against Mr. Walsh, but did so, instead, for the purposes of diminishing Mr. Walsh's credibility, punishing Mr. Walsh for the commencement and success of his prior lawsuit and for incurring the favor of defendants, including Lunsford, Milfort, Doran and Clark.

65.     Defendants, including Sample, Liebowitz and John Doe 1, also arrested, detained and caused the criminal prosecution to be initiated against Mr. Walsh in retaliation for Mr. Walsh's refusal to follow defendant Sample's directives or recommendations to shake hands with Mr. Bruno and to "forget about" the incident.

66.    Defendants, including Sample, Liebowitz and John Doe 1, unlawfully discriminated against Mr. Walsh, a White male, by unjustifiably and gratuitously arresting Mr. Walsh, instead of Mr. Bruno, believed to be a Hispanic or Latino male.

67.    Defendants, including Sample, Liebowitz and John Doe 1, further unlawfully discriminated and retaliated against Mr. Walsh by denying him the right or opportunity to file a criminal complaint or report against Mr. Bruno.

68.    Defendants, including Sample, Liebowitz and John Doe 1, fabricated false evidence against Mr. Walsh, namely the existence of an unknown eye-witness, who they falsely alleged to have claimed to observe Mr. Walsh assault and harass Mr. Bruno.

69.    Defendants, including Sample, Liebowitz and John Doe 1, coerced Mr. Bruno to falsely accuse Mr. Walsh of pushing Mr. Bruno off of his bicycle and causing Mr. Bruno to sustain to a laceration, swelling and substantial pain to his right leg, by threatening to arrest and commence a criminal prosecution against Mr. Bruno, if he did not comply.

70.    Defendants, including Sample, Liebowitz and John Doe 1, proceeded to forward said false information to the New York County District Attorney's Office, so that a criminal prosecution would be initiated against Mr. Walsh, despite being fully aware that said allegations were completely false and that Mr. Bruno never sustained the physical injuries alleged.

71.    Under the supervision and direction of defendant Sample, defendant Liebowitz was assigned to be Mr. Walsh's arresting officer and signed the criminal court complaint against Mr. Walsh, intentionally, knowingly and falsely accusing Mr. Walsh of Assault in the Third Degree and other related offenses.

72.    Defendants, including Sample, Liebowitz and John Doe 1, acting with malice, conveyed the aforementioned false, misleading and incomplete information to prosecutors in order to have Mr. Walsh prosecuted for Assault in the Third Degree and other related charges.

73.    Defendants, including Lunsford, Milfort, Doran and Clark, directed, requested or otherwise improperly influenced defendants,' including Sample's Liebowitz' and John Doe 1's, decision to falsely arrest and maliciously prosecute Mr. Walsh.

74.    Defendants, including Sample, Liebowitz and John Doe 1, suppressed and fabricated evidence, grossly deviated from proper police procedure and engaged in conduct undertaken in bad faith, namely the withholding of Mr. Walsh's rendition of the events, the aforementioned fabrication of a non-existent eye-witness and false information from said non-existent eye-witness, the coercion of Mr. Bruno, and the denial of Mr. Walsh's right to file a criminal complaint against Mr. Bruno.

75.    During all of the events described, the defendants, including Sample, Liebowitz, Lunsford, Milfort, Doran, Clark and John Doe 1, acted maliciously and with intent to injure Mr. Walsh.

76.    At all times relevant hereto, defendants, including Sample, Liebowitz, Lunsford, Milfort, Doran, Clark and John Doe 1, were involved in the decisions to arrest, detain or prosecute Mr. Walsh without probable cause or failed to intervene when they observed others arresting, detaining or prosecuting Mr. Walsh without probable cause.

77.    At all times relevant hereto, defendants, including Sample, Liebowitz, Lunsford, Milfort, Doran, Clark and John Doe 1, engaged in fraud, perjury, the suppression, manipulation or fabrication of evidence and other actions conducted in bad faith, or failed to intervene when defendants observed others doing so, all in furtherance of Mr. Walsh's malicious prosecution.

78.    Mr. Walsh asserts that defendants, including Sample, Liebowitz, and John Doe 1,

illegally targeted, falsely arrested and caused the initiation of a criminal prosecution against him

in retaliation for his prior successful lawsuit against the NYPD and defendants, including the

City, Lunsford, Milfort, Doran and Clark, because of their racial, ethnic, or age based

discriminatory prejudices, as well as their desire to meet an arrest quota or to benefit from

increased overtime compensation.

79.    Mr. Walsh further asserts that defendants,' including Sample's, Liebowitz,' and John Doe

1's, retaliatory or discriminatory intent is substantiated by the fact that Mr. Walsh was the sole

individual arrested, despite the presence of reliable and credible evidence and information

corroborating Mr. Walsh's status as the clear and obvious sole victim of any crime, including the

fact that Mr. Walsh was the first and only individual to dial "911" or otherwise request police

assistance in relation to the underlying criminal incident, the dearth of credible or reliable

evidence against Mr. Walsh, as well as the fact that Mr. Walsh was denied his right to file a

criminal complaint or report against Mr. Bruno, without any credible or viable explanation being

provided by defendants.

80.    Defendants, including Sample, Liebowitz, John Doe 1, arrested Mr. Walsh, not because

of any probable cause to believe he had committed any crimes or violations of the law, but

because Mr. Walsh is a White male or because he had commenced a prior successful lawsuit

against defendants, including Lunsford, Milfort, Doran and Clark, all fellow NYPD officers, who

were personally known to defendants, including Sample, Liebowitz, John Doe 1.

81.    Defendants, including Sample, Liebowitz and John Doe 1, perpetrated multiple overt acts

in furtherance of their obviously discriminatory and retaliatory inclinations and motivations,

namely the fabrication of a non-existent eye-witness, the fabrication of false allegations against

Mr. Walsh, the coercion of Mr. Bruno to provide false information and make specious allegations against Mr. Walsh, the false arrest, illegal detention and subsequent malicious prosecution of Mr. Walsh, as well as the denial of Mr. Walsh's right to pursue criminal charges against Mr. Bruno.

82.     Defendants, including Sample, Liebowitz and John Doe 1, unlawfully conspired with defendants, including Lunsford, Milfort, Doran and Clark, to unlawfully arrest, detain and maliciously prosecute Mr. Walsh, all in furtherance of their mutual and shared desire to retaliate against Mr. Walsh for the commencement of his prior successful lawsuit against defendants, including Lunsford, Milfort, Doran and Clark.

83.     Defendants, including Sample, Liebowitz, Lunsford, Milfort, Doran, Clark and John Doe 1, committed various overt acts in furtherance of said unlawful conspiracy, including each individual defendant's participation in, or knowledge of, a communication between two or more of the individually named defendants that detailed or otherwise set forth the plan or design to falsely arrest, detain and maliciously prosecute Mr. Walsh.

84.     Defendants, including Sample, Liebowitz and John Doe 1, committed additional overt acts in furtherance of said conspiracy, namely the fabrication of a non-existent eye-witness, the fabrication of false allegations against Mr. Walsh, the coercion of Mr. Bruno to provide false information and allegations against Mr. Walsh, the false arrest, illegal detention and subsequent malicious prosecution of Mr. Walsh, as well as the denial of Mr. Walsh's right to pursue criminal charges against Mr. Bruno.

85.     Defendants, including Lunsford, Milfort, Doran and Clark, committed overt acts in furtherance of their retaliatory and conspiratorial designs against Mr. Walsh, by soliciting, importuning, or acquiescing to the commission of the acts described in paragraph number eighty

(80) during the aforementioned communication that transpired at some point prior to Mr. Walsh's arrest.

86.     Defendants, including Sample, Liebowitz and John Doe 1, possessed no valid reason to arrest, detain or cause a criminal prosecution to be initiated against Mr. Walsh, or to deny Mr. Walsh the opportunity to file a criminal complaint against Mr. Bruno, the true and sole criminal offender, which gives rise to the strong inference that said unlawful acts were discriminatorily or retaliatorily motivated and perpetrated in furtherance of said impermissible motivations, as well as the aforementioned conspiracy.

87.     Defendants, including Sample, Liebowitz and John Doe 1, subjected Mr. Walsh to disparate treatment compared to other individuals similarly situated, such as Mr. Bruno, because defendants did not arrest or cause the initiation of a criminal prosecution against Mr. Bruno, despite the fact that Mr. Bruno was accused of various crimes and offenses by Mr. Walsh, a law enforcement officer and credible witness, who was personally present.

88.     Accordingly, if there was probable cause to arrest either of individuals involved in the underlying criminal incident, Mr. Walsh and Mr. Bruno, it existed solely for Mr. Bruno.

89.     Mr. Walsh asserts that he was impermissibly treated differently than Mr. Bruno, because Mr. Walsh had previously filed a lawsuit against NYPD officers or supervising officers, including defendants Lunsford, Milfort, Doran and Clark, who were personally known to defendants, including Sample, Liebowitz and John Doe 1, and also because Mr. Walsh is a White male, while Mr. Bruno had never filed a lawsuit against the NYPD, at least a lawsuit that defendants were personally aware of, and is a male of Hispanic or Latino descent or origin.

90.     Defendants,' including Sample's, Liebowitz and John Doe 1's, unlawful arrest, detention and initiation of a criminal prosecution against Mr. Walsh, performed or carried out at the

direction or behest of defendants, including Lunsford, Milfort, Doran and Clark, adversely affected or chilled Mr. Walsh's desire to engage in activities or speech protected by the First Amendment, such as his right to report a crime and to file a criminal complaint against Mr. Bruno, to disagree and refuse follow a directive from a police lieutenant to shake hands and forget about a criminal incident, and to pursue court sanctioned redress for violations of his civil rights.

91.    Mr. Walsh's unlawful arrest and detention adversely affected his ability to file a criminal complaint against Mr. Bruno and chilled his desire to request police assistance, disagree with a police officer's recommendation to refrain from making a formal criminal complaint or report, or to engage in further litigation against the NYPD or its employees, because the instant arrest and acts of defendants, including Sample, Liebowitz and John Doe 1, physically prevented him from filing a criminal complaint against Mr. Bruno, diminished Mr. Walsh's credibility, and caused him to be fearful of future retaliatory acts if he engaged in the aforementioned constitutionally protected activities.

92.    Plaintiff asserts that the defendants, including Sample, Liebowitz, Lunsford, Milfort, Doran, Clark and John or Jane Does 1-10, who violated plaintiff's civil rights, are part of a larger pattern and practice of similar misconduct, which is so widespread, pervasive and consistent throughout the NYPD and the City of New York that the commission such constitutionally violative behavior has become tantamount to an official policy or custom within the NYPD and City of New York or, at the very least, conclusive evidence that the City and the NYPD have either tacitly approved of such egregious wrongdoings or that they have become deliberately indifferent to the civil rights of those who may come into contact their police officers.

93.     The individually named defendants herein, as well as other officers serving in the employ of the NYPD and City of New York, have blatantly, shamelessly, consistently and repeatedly engaged in conduct violative of the civil rights guaranteed and protected by Constitution of the United States, in addition to the laws and Constitution of the State of New York, all without incurring any ramifications for such misconduct and, ostensibly, with the full and complete blessing of the NYPD, the City of New York and their respective policymakers and supervisors.

94.     *The New York Times*, as well as numerous other reputable journalistic enterprises, have reported on the widespread corruption within the NYPD and City of New York, particularly the incredibly disconcerting proclivity of many NYPD officers to lie about subject matters that are materially relevant to criminal prosecutions, including the complete fabrication of arrest evidence and witnesses. Attached hereto, as Exhibit A, and incorporated by reference herein, are various articles and reports detailing the magnitude and overwhelming prevalence of incidents, in which NYPD officers were caught lying, including instances that resulted in the arrest and imprisonment of innocent people. Also detailed, is the NYPD's obstinate refusal to effectuate corrective or preventive measures to combat the inevitable recurrence of such misdeeds, and perhaps most troubling, the NYPD's alarming tendency to, instead, reward and promote these officers, including those who were inculpated via some incontrovertible form of evidence.

95.     On March 18, 2018, *The New York Times* published an explosive article, entitled "Promotions, Not Punishments for Officers Accused of Lying," written by Joseph Goldstein. Mr. Goldstein shines a light on the multitude of flaws within the CCRB and the NYPD, highlighting the fact that the substantiation of a claim against an officer will invariably rely on the presence of incontrovertible proof against the officer. Due to the rarity availability of this type of evidence, an alarmingly small percentage of officer misconduct claims are substantiated. The CCRB is

further handicapped by a terribly designed system that requires evidence of a virtually indisputable nature to substantiate any claim against an officer. The article also details the NYPD's persistent reluctance to investigate or discipline officers who lie and even posits that this reluctance is a significant cause of the lying pandemic within the NYPD. The article references various officers and detectives who were the subject of credible accusations relating to the officers' intentionally false statements, with some allegations coming from federal and state judges.

96.    On September 12, 2019, *The New York Times* published another article by Joseph Goldstein, entitled "Officers Said They Smelled Pot. The Judge Called Them Liars." Unsurprisingly, this article dealt with the unusually high frequency of officers using the odor of marijuana to excuse a search that conspicuously does not result in the recovery of any marijuana. It should not require an article in *The New York Times* to call attention to such patently disingenuous tactics, but has become necessary for a variety of reasons, including the NYPD's failure to correct such behavior, the willingness of prosecutors and judges to credit the lying officers and the increasing rate of occurrence.

97.    On April 24, 2019, *The New York Times* published an article, entitled "Detective's Lies Sent Three People to Prison, Prosecutors Charge," by Sean Piccolo, detailing the lies of NYPD Second Grade Detective Joseph Franco and how those lies resulted in the imprisonment of at least three innocent people. The article described how Det. Franco lied about observing drug transactions on at least three separate occasions, lies that were only uncovered through contradictory video evidence. Det. Franco's lies resulted in the innocent individuals each being sentenced to prison terms in excess of one-year.

98.    Other articles include: (i) "Testilying' by Police: A Stubborn Problem.," by Joseph

Goldstein, *The New York Times*, March 18, 2018; (ii) "New York Detective Charged with Faking

Lineup Results," by Joseph Goldstein, *The New York Times*, February 17, 2018; (iii) "He

Excelled as a Detective, Until Prosecutors Stopped Believing Him," by Joseph Goldstein, *The*

*New York Times*, October 17, 2017; (iv) "Review Board Notes Rise in New York Police

Officers' False Statement," by J. David Goodman, *The New York Times*, May 14, 2015; (v) "In

Brooklyn Gun Cases, Suspicion Turns to the Police," by Stephanie Clifford, *The New York*

*Times*, December 11, 2014; (vi) "Detective is Found Guilty of Planting Drugs," by Tim Stelloh,

*The New York Times*, November 1, 2011; and (vii) "The Drugs? They Came From the Police,"

by Jim Dwyer, *The New York Times*, October 13, 2011.

99.    The NYPD has a longstanding and ignominious record of failing to discipline its officers,

or even entertaining allegations of wrongdoing against them. On June 26, 2019, *The New York*

*Times* published an article, entitled "2,495 Reports of Police Bias. Not One Was Deemed Valid

by the N.Y.P.D." This article reported that within the last five (5) years, almost 2,500 separate

individuals have filed formal complaints with the NYPD alleging that an officer acted with bias

toward them, with not a single one being substantiated by the NYPD. Such a finding is plainly

incredible and obviously the result of deliberately poor or nonexistent investigatory protocols.

The report further impugned the NYPD's commitment to combat the prejudices and the biases

exhibited by many of its officers.

100.    Upon information and belief, the NYPD, the City of New York, and their respective

policymakers, officials or supervisors have imposed, tacitly approved or acquiesced to policies,

customs, or patterns and practices within the NYPD that resulted in plaintiff's arrest without

probable cause.

101.    Upon information and belief, the NYPD, the City of New York, and their respective policymakers or supervisors have failed to provide adequate training regarding the identification of probable cause, reasonable suspicion or the appropriate amount of force to be used.

102.    Defendants' actions, pursuant to plaintiff's underlying arrest, which occurred without even the semblance of probable cause, were so blatantly violative of plaintiff's civil rights that the tacit approval of identical or similar acts by the policymakers or supervisors of the NYPD and the City of New York, as well as their deliberate indifference towards the rights of any individuals who may come into contact with defendants, should be inferred, because such flagrant deprivations of constitutionally protected rights could not and would not occur without the tacit approval or deliberate indifference regarding the commission of such violations by the policymakers or supervisors of the NYPD and City of New York.

103.    Upon information and belief, further details and facts, relating to the unlawful policies, customs or patterns and practices of the NYPD, City of New York and their respective policymakers, supervisors, police officers or employees, will become known after the completion of discovery, as such information is presently within the exclusive possession of defendants, the NYPD and City of New York.

104.    Upon information and belief, the personnel files, records and disciplinary histories of the officer defendants will reveal a history of Constitutional violations indicative of defendant City's knowledge that the individual officer defendants were unfit for employment as NYPD officers, or for employment in general, and that the probability of the individually named defendants committing similar violations in the future was extremely high.

105.    Upon information and belief, said personnel files, records and disciplinary histories will conclusively show that the City and the NYPD were fully aware of defendants' past

constitutional violations, the unacceptably high probability for the recurrence of similar

transgressions, the unreasonably dangerous situations that were likely to result from their hiring

or retention, as well as their unsuitability for employment as law enforcement officers, or for

employment in general, and that the NYPD and City of New York failed to engage in any

preventive or corrective action intended to diminish the likelihood of recurrence for such

violations, which is tantamount to the City's tacit approval of such misconduct or the City's

deliberate indifference towards the civil rights of those who may interact with its employees,

including Sample, Liebowitz, Lunsford, Milfort, Doran, Clark and John or Jane Does 1-10.

106.    Upon information and belief, within only the last five (5) years, the individually named

defendants have combined to be named as defendants in at least ten (10) lawsuits that have

accused them of committing violations similar or identical to those alleged herein.

107.    Upon information and belief, within the only the last five (5) years, defendant Sample,

who has been employed by the NYPD for over fifteen (15) years, has been named as a defendant

in at least four (4) lawsuits that have accused him of committing violations similar or identical to

those alleged herein

108.    Upon information and belief, the NYPD and City of New York and have failed, or

outright refused, to correct the individually named defendants' predilections to engage in

unconstitutional behavior or attempt to prevent the recurrence of such misconduct

109.    The aforementioned acts of defendants, including the City, Sample, Liebowitz, Lunsford,

Milfort, Doran, Clark and John or Jane Does 1-10, directly or proximately resulted in the

deprivation or violation of Mr. Walsh's civil rights, as guaranteed and protected by the First,

Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, as well as the

laws and Constitution of the State of New York.

110.    As direct or proximate results of said acts, Mr. Walsh was caused to suffer the loss of his liberty, irreparable reputational harm, loss of earnings and potential earnings, physical injury, as well as severe and permanent emotional distress, including fear, embarrassment, humiliation, traumatization, frustration, extreme inconvenience, and anxiety.

## FIRST CAUSE OF ACTION
First Amendment Retaliation Claim Under
New York State Law

111.    Plaintiff re-alleges and re-avers Paragraph 1 through 110 of this Complaint as if fully set forth herein.

112.    Plaintiff engaged in speech and activities that were protected by the First Amendment to the United States Constitution and Article I, Section 8, of the New York State Constitution.

113.    Defendants committed impermissible or unlawful actions against plaintiff that were motivated or substantially caused by plaintiff's constitutionally protected speech or activities.

114.    Defendants' retaliatory actions against plaintiff resulted in the deprivation of his liberty and the initiation of criminal charges against him.

115.    Defendants' retaliatory actions adversely affected plaintiff's protected speech or activities by physically or procedurally preventing him from further pursuing said protected speech or activities or by chilling his desire to further participate or engage in such protected speech or activities.

116.    Accordingly, plaintiff's right to engage in protected speech and activities, guaranteed and protected by the First Amendment to the United States Constitution and Article I, Section 8, of the New York State Constitution, were violated by defendants.

117.    Defendant City of New York, as employer of the individual Defendants, is responsible for their wrongdoings, under the doctrine of *respondeat superior*.

118.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## <u>SECOND CAUSE OF ACTION</u>
First Amendment Retaliation Claim Under
42 U.S.C. § 1983 Against Individual Defendants

119.    Plaintiff re-alleges and re-avers Paragraph 1 through 118 of this Complaint as if fully set forth herein.

120.    Plaintiff engaged in speech and activities that were protected by the First Amendment to the United States Constitution and Article I, Section 8, of the New York State Constitution.

121.    Defendants committed impermissible or unlawful actions against plaintiff that were motivated or substantially caused by plaintiff's constitutionally protected speech or activities.

122.    Defendants' retaliatory actions against plaintiff resulted in the deprivation of his liberty and the initiation of criminal charges against him.

123.    Defendants' retaliatory actions adversely affected plaintiff's protected speech or activities by physically or procedurally preventing him from further pursuing said protected speech or activities, or by chilling his desire to further participate or engage in such protected speech or activities.

124.    Accordingly, plaintiff's right to engage in protected speech and activities, guaranteed and protected by the First Amendment to the United States Constitution and Article I, Section 8, of the New York State Constitution, were violated by defendants.

125.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

**THIRD CAUSE OF ACTION**
Unlawful Search and Seizure Under
New York State Law

126.    Plaintiff re-alleges and re-avers Paragraph 1 through 125 of this Complaint as if fully set forth herein.

127.    Defendants subjected plaintiff and his property to unreasonable searches and seizures without a valid warrant and without reasonable suspicion or probable cause do so.

128.    Plaintiff was conscious and fully aware of the unreasonable searches and seizures to his person and property.

129.    Plaintiff did not consent to the unreasonable searches and seizures to his person or property.

130.    The unreasonable searches and seizures to plaintiff's person and property were not otherwise privileged.

131.    Accordingly, defendants violated plaintiff's right to be free from unreasonable searches and seizures, pursuant to the Fourth Amendment to the United States Constitution and Article I, Section 12, of the New York State Constitution.

132.    Defendant City of New York, as employer of the individual Defendants, is responsible for their wrongdoings under the doctrine of *respondeat superior*.

133.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

**FOURTH CAUSE OF ACTION**
Unlawful Search and Seizure Under
42 U.S.C. § 1983 Against Individual Defendants

134.    Plaintiff re-alleges and re-avers Paragraph 1 through 134 of this Complaint as if fully set forth herein.

135.    Defendants subjected plaintiff and his property to unreasonable searches and seizures without a valid warrant and without reasonable suspicion or probable cause do so.

136.    Plaintiff was conscious and fully aware of the unreasonable searches and seizures to his person and property.

137.    Plaintiff did not consent to the unreasonable searches and seizures to his person or property.

138.    The unreasonable searches and seizures to plaintiff's person and property were not otherwise privileged.

139.    Accordingly, defendants violated plaintiff's right to be free from unreasonable searches and seizures, pursuant to the Fourth Amendment to the United States Constitution and Article I, Section 12, of the New York State Constitution.

140.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FIFTH CAUSE OF ACTION
False Arrest and False Imprisonment Under
New York State Law

141.    Plaintiff re-alleges and re-avers Paragraph 1 through 140 of this Complaint as if fully set forth herein.

142.    Defendants subjected Plaintiff to false arrest, false imprisonment, and deprivation of liberty without a valid warrant or probable cause.

143.    Plaintiff was conscious of his confinement.

144.    Plaintiff did not consent to his confinement.

145.    Plaintiff's arrest and false imprisonment was not otherwise privileged.

146.    Defendant City of New York, as employer of the individual Defendants, is responsible for their wrongdoings under the doctrine of *respondeat superior*.

147.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SIXTH CAUSE OF ACTION
False Arrest and False Imprisonment Under
42 U.S.C. § 1983 Against Individual Defendants

148.    Plaintiff re-alleges and re-avers Paragraph 1 through 147 of this Complaint as if fully set forth herein.

149.    The Defendants violated the Fourth and Fourteenth Amendments to the U.S. Constitution by wrongfully and illegally arresting, detaining and imprisoning Plaintiff.

150.    The wrongful, unjustifiable, and unlawful apprehension, arrest, detention, and imprisonment of Plaintiff was carried out without a valid warrant, without Plaintiff's consent, and without probable cause or reasonable suspicion.

151.    At all relevant times, Defendants acted forcibly in apprehending, arresting, and imprisoning Plaintiff.

152.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SEVENTH CAUSE OF ACTION
Assault and Battery Under
New York State Law

153.    Plaintiff re-alleges and re-avers Paragraph 1 through 152 of this Complaint as if fully set forth herein.

154.    At all relevant times, Defendants caused Plaintiff to fear for his physical well-being and safety and placed him in apprehension of immediate harmful and/or offensive touching.

155.    Defendants engaged in and subjected Plaintiff to immediate harmful and/or offensive touching and battered him without his consent or justification.

156.    Due to the intentional, willful and unlawful acts of Defendants, Plaintiff suffered damages.

157.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

158.    As a direct and proximate result of this breach, Plaintiff sustained the damages hereinbefore alleged.

## EIGHTH CAUSE OF ACTION
Excessive Force Under
42 U.S.C. § 1983 Against Individual Defendants

159.    Plaintiff re-alleges and re-avers Paragraph 1 through 158 of this Complaint as if fully set forth herein.

160.    The Defendants violated Plaintiff's rights under the Fourth and Fourteenth Amendments, because they used unreasonable force without Plaintiff's consent.

161.    Defendants engaged in and subjected Plaintiff to immediate harmful and/or offensive touching and battered him without his consent.

162.    As a direct and proximate result of this breach, Plaintiff sustained the damages hereinbefore alleged.

## NINTH CAUSE OF ACTION
Malicious Prosecution Under
New York State Law

163.    Plaintiff re-alleges and re-avers Paragraphs 1 through 162 of this Complaint as if fully set forth herein.

164.    Defendants initiated the prosecution against Plaintiff.

165.    Defendants lacked probable cause to believe Plaintiff was guilty or that the prosecution would succeed.

166.    Defendants acted with malice, which, in the absence of probable cause, may be inferred.

167.    The prosecution was terminated in Plaintiff's favor, when all criminal charges were unconditionally dismissed and sealed.

168.    Due to the intentional, willful and unlawful acts of Defendants, Plaintiff suffered significant damages.

169.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

170.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## TENTH CAUSE OF ACTION
Malicious Prosecution Under
42 U.S.C. § 1983 Against Individual Defendants

171.    Plaintiff re-alleges and re-avers Paragraphs 1 through 170 of this Complaint as if fully set forth herein.

172.    Defendants initiated the prosecution against Plaintiff.

173.    Defendants lacked probable cause to believe Plaintiff was guilty or that the prosecution would succeed.

174.    Defendants acted with malice, which, in the absence of probable cause, may be inferred.

175.    The prosecution was terminated in Plaintiff's favor, when all criminal charges were unconditionally dismissed and sealed.

176.    Defendants violated Plaintiff's Fourth and Fourteenth Amendment rights by causing Plaintiff to remain unlawfully incarcerated after his arraignment and trial by jury

177.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

**ELEVENTH CAUSE OF ACTION**
Malicious Abuse of Process Under
New York State Law

178.    Plaintiff re-alleges and re-avers Paragraph 1 through 177 of this Complaint as if fully set forth herein.

179.     Defendants arrested, detained and caused a criminal prosecution to be initiated against Plaintiff to compel the compliance or forbearance of some act.

180.    Defendants had no excuse or justification to forcibly detain or initiate a prosecution against Plaintiff, especially with the absence of any cognizable probable cause.

181.    Defendants intended to inflict substantial harm upon Plaintiff.

182.    Defendants acted to achieve a collateral purpose, beyond or in addition to Plaintiff's criminal prosecution.

183.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

184.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

**TWELFTH CAUSE OF ACTION**
Malicious Abuse of Process Under
42 U.S.C. § 1983 Against Individual Defendants

185.    Plaintiff re-alleges and re-avers Paragraph 1 through 184 of this Complaint as if fully set forth herein.

186.    Defendants arrested, detained and caused a criminal prosecution to be initiated against Plaintiff to compel the compliance or forbearance of some act.

187.    Defendants had no excuse or justification to forcibly detain and initiate a prosecution against Plaintiff, especially with the absence of any cognizable probable cause.

188.    Defendants intended to inflict substantial harm upon Plaintiff.

189.    Defendants acted to achieve a collateral purpose, beyond or in addition to Plaintiff's criminal prosecution.

190.    Defendants' actions deprived Plaintiff of his constitutional rights to free from illegal searches and seizures and to not be deprived of his liberty without the due process of law.

191.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### THIRTEENTH CAUSE OF ACTION
Denial of Right to Fair Trial Under
New York State Law

192.    Plaintiff re-alleges and re-avers Paragraphs 1 through 191 of this Complaint as if fully set forth herein.

193.    Defendants fabricated false evidence to be used against Plaintiff that was likely to influence a jury's decision and forwarded said false information to the New York County District Attorney's Office.

194.    Defendants' actions deprived Plaintiff of his right to a fair trial and caused post-arraignment restrictions to be imposed on his liberty and freedom of movement.

195.    Accordingly, defendants violated Plaintiff's right to fair trial, pursuant to the Sixth Amendment to United States Constitution, Article I, Sections 1, 2 and 6 of the New York State Constitution, as well Article II, Section 12, of the New York State Civil Rights Law.

196.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

197.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FOURTEENTH CAUSE OF ACTION
Denial of Right to Fair Trial Under
42 U.S.C. § 1983 Against Individual Defendants

198.    Plaintiff re-alleges and re-avers Paragraphs 1 through 197 of this Complaint as if fully set forth herein.

199.    Defendants fabricated false evidence to be used against Plaintiff that was likely to influence a jury's decision and forwarded said false information to the New York County District Attorney's Office.

200.    Defendants' actions deprived Plaintiff of his right to a fair trial and caused post-arraignment restrictions to be imposed on his liberty and freedom of movement.

201.    Accordingly, defendants violated Plaintiff's right to fair trial, pursuant to the Sixth Amendment to United States Constitution, Article I, Sections 1, 2 and 6 of the New York State Constitution, as well Article II, Section 12, of the New York State Civil Rights Law.

202.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FIFTEENTH CAUSE OF ACTION
Deprivation of Rights and Denial of Equal Protection of the Laws under
New York State law

203.    Plaintiff re-alleges and re-avers Paragraph 1 through 202 of this Complaint as if fully set forth herein.

204.    Plaintiff is a White male.

205.    Defendants intentionally discriminated against Plaintiff on the basis of his race, national origin, ethnicity, religion or sex.

206.    Defendants also engaged in the selective treatment of Plaintiff, in comparison to others similarly situated.

207.    Defendants' selective treatment of Plaintiff was based on impermissible considerations, such as color, race, ethnicity, national origin, sex, an intent to inhibit or punish Plaintiff's exertion of his Constitutional rights, or a malicious or bad faith intent to injure Plaintiff.

208.    Defendants applied facially neutral laws against Plaintiff in a discriminatory manner.

209.    Defendants, motivated by discriminatory animus, applied facially neutral statutes with adverse effects against Plaintiff.

210.    Defendants did not possess a rational basis, excuse or justification for applying any laws or statutes against Plaintiff.

211.    Accordingly, defendants violated Plaintiff's Constitutionally protected rights, pursuant to the Fourteenth Amendment to the United States Constitution and Article I, Section 11, the New York State Constitution, as well as Article VII, Section 79-n, of the New York State Civil Rights Law.

212.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

213.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SIXTEENTH CAUSE OF ACTION
Deprivation of Rights and Denial of Equal Protection of the Laws under
42 U.S.C. §§ 1981 and 1983 Against Individual Defendants

214.    Plaintiff re-alleges and re-avers Paragraph 1 through 213 of this Complaint as if fully set forth herein.

215.    Plaintiff is a White male.

216.    Defendants discriminated against Plaintiff on the basis of his color, race, national origin, ethnicity, religion or sex.

217.    Defendants also selectively treated Plaintiff in comparison to others similarly situated.

218.    Defendants' selective treatment of Plaintiff was based on impermissible considerations, such as color, race, ethnicity, national origin, religion, sex, an intent to inhibit or punish Plaintiff's exertion of his Constitutional rights, or a malicious or bad faith intent to injure Plaintiff.

219.    Defendants applied facially neutral laws against Plaintiff in a discriminatory manner.

220.    Defendants, motivated by a discriminatory animus, applied facially neutral penal statutes with adverse effects against Plaintiff.

221.    Defendants did not possess a rational basis, excuse or justification for applying any laws or statutes against Plaintiff.

222.    Accordingly, defendants violated Plaintiff's Constitutionally protected rights, pursuant to the Fourteenth Amendment to the United States Constitution and Article I, Section 11, the New York State Constitution, as well as Article VII, Section 79-n, of the New York State Civil Rights Law.

223.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SEVENTEENTH CAUSE OF ACTION
Conspiracy to Interfere with Civil Rights and Failure to Prevent the Conspiracy under
42 U.S.C. §§ 1983, 1985 and 1986 Against Individual Defendants

224.    Plaintiff re-alleges and re-avers Paragraph 1 through 223 of this Complaint as if fully set forth herein.

225.    Defendants engaged in a conspiracy against Plaintiff to deprive Plaintiff of his rights to engage in protected speech or activities, to be free from unreasonable searches and seizures, to

be afforded a fair trial, to not be deprived of his liberty or property without due process of law, to the equal protection of the laws, or of the privileges and immunities under the laws and constitutions of the United States and of the State of New York.

226.    Defendants committed overt acts in furtherance of their conspiracy against Plaintiff.

227.    As a result, Plaintiff sustained injuries to his person, was deprived of his liberty or was deprived of rights or privileges of citizens of the United States.

228.    Defendants' conspiracy was motivated by a desire to inhibit or punish Plaintiff for exercising his constitutional rights, or because of some racial, otherwise class-based, invidious or discriminatory animus.

229.    The Defendants that did not engage or participate in the conspiracy to interfere with Plaintiff's civil rights, had knowledge that acts in furtherance of the conspiracy were about to be committed or in process of being committed, possessed the power to prevent or aid in the prevention of the conspiratorial objective, and neglected to do so.

230.    Accordingly, defendants violated Plaintiff's rights, pursuant to the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

231.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## EIGHTEENTH CAUSE OF ACTION
### Failure to Intervene Under
### New York State Law

232.    Plaintiff re-alleges and re-avers Paragraph 1 through 231 of this Complaint as if fully set forth herein.

233.    Those Defendants that were present but did not actively participate in the aforementioned unlawful conduct, observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct, and failed to intervene.

234.    Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

235.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## NINETEENTH CAUSE OF ACTION
Failure to Intervene Under
42 U.S.C. § 1983 Against Individual Defendants

236.    Plaintiff re-alleges and re-avers Paragraph 1 through 235 of this Complaint as if fully set forth herein.

237.    Those Defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct, and failed to intervene.

238.    Accordingly, the Defendants who failed to intervene violated the Fourth and Fourteenth Amendments.

239.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## TWENTIETH CAUSE OF ACTION
Negligent Hiring, Training, Retention and Supervision Under
New York State Law

240.    Plaintiff re-alleges and re-avers Paragraph 1 through 239 of this Complaint as if fully set forth herein.

241.    Defendant City owed a duty of care to Plaintiff to adequately hire, train, retain and supervise its employee defendants.

242.    Defendant City breached those duties of care.

243.    Defendant City placed defendants in a position where they could inflict foreseeable harm.

244.    Defendant City knew or should have known of its employee defendants' propensity for violating the individual rights granted under the United States Constitution and the laws of the State of New York, prior to the injuries incurred by Plaintiff.

245.    Defendant City failed to take reasonable measures in hiring, training, retaining and supervising its employee defendants that would have prevented the aforesaid injuries to Plaintiff.

246.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## TWENTY-FIRST CAUSE OF ACTION
Municipal "*Monell*" Liability Under
42 U.S.C. § 1983 Against Defendant City

247.    Plaintiff re-alleges and re-avers Paragraph 1 through 246 of this Complaint as if fully set forth herein.

248.    Defendant City maintained a policy or custom that caused Plaintiff to be deprived of his civil rights, tacitly approved of such violative conduct or was deliberately indifferent toward the potential exposure of individuals, such as plaintiff, to such violative behavior.

249.    Defendant City's employee police officers have engaged in an illegal pattern and practice of misconduct, so consistent and widespread that it constitutes a custom or usage, of which a supervisor or policymaker must have been aware of.

250.    Defendant City, its policymakers and supervisors failed to provide adequate training or supervision to their subordinates, to such an extent that is tantamount to the City's deliberate

indifference toward the rights of those who may come into contact with defendant City's employees.

251.    Defendant City's employees engaged in such egregious and flagrant violations of plaintiff's Constitutional rights that the need for enhanced training or supervision is obvious and equates to a display of deliberate indifference by defendant City and its policymakers toward the rights of individuals, who may come into contact with defendant City's employees.

252.    Defendant City's repeated refusal or failure to install or apply corrective or preventive measures constitutes the tacit approval of such violative behavior or a deliberate indifference to the rights of those who may be affected by such behavior.

253.    Defendant City's conduct caused the violation of plaintiff's civil rights enumerated within the Constitution of the United States.

254.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.


**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants, jointly and severally, as follows:

a)    In favor of Plaintiff in an amount to be determined by a jury for each of Plaintiff's causes of action;

b)    Awarding Plaintiff punitive damages in an amount to be determined by a jury;

c)    Awarding Plaintiff compensatory damages in an amount to be determined by a jury;

d)    Awarding Plaintiff reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 1988 and New York Civil Rights Law, Art. VII, § 79-n; and

**e)**    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: October 7, 2019

                              Respectfully submitted,


                              _S/ Samuel C. DePaola_____
                              By: Samuel C. DePaola, Esq.
                              Bar Number: SD0622
                              Sim & DePaola, LLP
                              *Attorneys for Mr. Walsh*
                              4240 Bell Blvd, Ste 201
                              Bayside, NY 11361
                              T: (718) 281-0400
                              F: (718) 631-2700
                              sdepaola@simdepaola.com