UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
+-----------------------------------+
| USDC SDNY                         |
| DOCUMENT                          |
| ELECTRONICALLY FILED              |
| DOC #: _____           |
| DATE FILED:  3/31/2021            |
+-----------------------------------+
```

MARTIN WALSH,

                              Plaintiff,

              -against-

CITY OF NEW YORK, individually and in their
official capacities as New York City police
officers, KEVON SAMPLE, OLIVER
LIEBOWITZ, JASON LUNSFORD, JHONNY
MILFORT, CATHERINE DORAN, MICHAEL
CLARK and JOHN or JANE DOES 1-10,

                              Defendants.

19 Civ. 9238 (AT)

**ORDER**

ANALISA TORRES, District Judge:

    Plaintiff, Martin Walsh, brings this action against Defendants, the City of New York

(the "City"), New York City Police Department (the "NYPD") Officers Kevon Sample, Oliver

Liebowitz, John Doe 1 (collectively, the "Arresting Officers"), Jason Lunsford, Jhonny

Milfort, Catherine Doran, Michael Clark, and John or Jane Does 2–10 (together with the

Arresting Officers, the "Defendant Officers," and all together with the City, "Defendants"),

under 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988, alleging violations of his rights under

the First, Fourth, and Fourteenth Amendments to the United States Constitution, along with

parallel violations under New York state law and the New York Constitution. Compl., ECF

No. 1. Defendants move to dismiss the complaint. ECF No. 28. For the reasons stated below,

Defendants' motion to dismiss is GRANTED in part and DENIED in part.

## BACKGROUND

    The following facts are taken from the complaint and accepted as true for the purposes

of this motion. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

In June 2018, Martin Walsh, a white man, was on the northwest corner of First Avenue and 87th Street in Manhattan attempting to cross the street, when he was almost struck by a bicyclist, Francisco Bruno, Jr.  Compl. ¶¶ 21–22, 24.  Bruno, who is believed to be of "Hispanic or Latino" descent, brandished a metal chain in a threatening manner, while using profanity and other threatening language.  *Id*. ¶¶ 24, 66.  Plaintiff continued walking until Bruno dismounted his bicycle and blocked Plaintiff's path.  *Id*. ¶ 25.  Plaintiff turned around, walked away from Bruno, and dialed 911.  *Id*. ¶¶ 26–27.  Plaintiff informed the 911 operator that he was an off-duty court officer in need of emergency assistance because he was being menaced and harassed by Bruno.  *Id*. ¶ 28.  Less than five minutes later, Officers Oliver Liebowitz and John Doe 1 arrived at the scene.  *Id*. ¶ 29.  Plaintiff recounted the incident to the officers, and identified Bruno.  *Id*. ¶ 30.  Liebowitz then began questioning Bruno.  *Id*. ¶ 31.

Soon thereafter, Officer Kevon Sample arrived and interviewed Bruno.  *Id*. ¶¶ 32–33.  Sample then approached Plaintiff and asked him to shake hands with Bruno and "forget about this," which Plaintiff refused to do.  *Id*. ¶¶ 34–35.  Liebowitz appeared annoyed at Plaintiff's refusal, said "we'll see about that," and then directed Plaintiff to not leave the scene while Liebowitz walked away with Sample.  *Id*. ¶¶ 36–37.  When Sample and Liebowitz returned, Sample informed Plaintiff that the police had identified a witness to the altercation, and that Plaintiff was under arrest based on the information provided by that witness.  *Id*. ¶¶ 38–40.

At the direction of Sample, Liebowitz and Doe 1 handcuffed Plaintiff, placed him in a police car, and transported him to the NYPD's 19th precinct.  *Id*. ¶ 41.  Plaintiff complained to Liebowitz and Doe 1 that the handcuffs were too tight, causing him substantial pain and discomfort.  *Id*. ¶ 42.  He states that he was ignored for approximately twenty minutes.  *Id*. ¶ 43.  At the precinct, Plaintiff was searched, questioned, photographed, and fingerprinted.  *Id*. ¶ 44.  He asked about the status of his cross-complaint against Bruno, because Plaintiff had

told the Arresting Officers that his job required him to file a formal complaint whenever he dialed 911. The officers ignored his requests. *Id*. ¶¶ 35, 45. Later that evening, Plaintiff was moved to Central Booking, where he was subjected to additional searches and placed in a cell. *Id*. ¶¶ 46–47. At approximately 11:00 p.m., Plaintiff was arraigned and released on his own recognizance. *Id*. ¶ 48. He appeared in Criminal Court three times to contest the charges, and on December 19, 2018, the case was dismissed. *Id*. ¶¶ 51–52.

Plaintiff alleges that the Arresting Officers conspired with the other Defendant Officers—Lunsford, Milfort, Doran, and Clark—to arrest and criminally prosecute Plaintiff in retaliation for a prior, unrelated federal lawsuit that Plaintiff filed against the City of New York, Lunsford, Milfort, Doran, and Clark. *Id*. ¶¶ 58, 79–89. As a result of that lawsuit, Plaintiff recovered a substantial money judgment. *Id*. ¶ 61. He alleges that Sample and Liebowitz knew Lunsford and Milfort at the time of Plaintiff's arrest, and that Sample had previously worked with Lunsford and Milfort at the same precinct. *Id*. ¶¶ 60, 80. Plaintiff alleges that Sample knew that an appeal of the prior lawsuit was pending before the Second Circuit. *Id*. ¶ 62.

## DISCUSSION

### I.   Legal Standard

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555. Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. Courts must accept the

allegations in the complaint as true and draw all reasonable inferences in favor of the non-movant. *ATSI Commc'ns, Inc.*, 493 F.3d at 98.

"On a motion to dismiss, the court may consider any written instrument attached to the complaint as an exhibit or any statements or documents incorporated in it by reference." *Yak v. Bank Brussels Lambert*, 252 F.3d 127, 130 (2d Cir. 2001) (internal quotation marks, alteration, and citation omitted). "To be incorporated by reference, the [c]omplaint must make a clear, definite, and substantial reference to the documents." *White v. City of New York*, 206 F. Supp. 3d 920, 929 (S.D.N.Y. 2016) (citation and quotation marks omitted). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *Id.* (citation omitted). The Court may also rely upon "matters of which judicial notice may be taken," which include facts that are "not subject to reasonable dispute in that [they are] (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned." *Davis v. Cotov*, 214 F. Supp. 2d 310, 315 (E.D.N.Y. 2002).

II.    Documents Considered

Defendants ask the Court to consider the following documents in deciding their motion to dismiss: (1) a copy of the Sprint event chronology which provides details regarding a call placed to 911 by Bruno, *see* ECF No. 30-2; (2) a copy of the Sprint event chronology which provides details regarding the call placed to 911 by Plaintiff, *see* ECF No. 30-3; (3) a copy of the criminal complaint prepared by the New York County District Attorney's Office in connection with Plaintiff's arrest, *see* ECF No. 30-4; and (4) a certificate of disposition indicating that the charges against Plaintiff were dismissed, *see* ECF No. 30-5; Def. Mem. at 8–9, ECF No. 29.

The Court shall take into consideration the certificate of disposition. *See Crown Heights Shomrim Volunteer Safety Patrol, Inc. v. City of New York*, 2014 WL 4804869, at *1 (E.D.N.Y. Sept. 25, 2014) ("Matters of public record of which the court may take judicial notice include . . . certificates of disposition."). Plaintiff alleges that the criminal prosecution against him was resolved in his favor, *see* Compl. ¶¶ 167, 175, and there is no "material dispute[] regarding the relevance" or "authenticity" of this document, *Azurdia v. City of New York*, No. 18 Civ. 4189, 2019 WL 1406647, at *4–5 (E.D.N.Y. Mar. 28, 2019) (quotation marks omitted).

By contrast, the Court is not persuaded that it should consider the criminal complaint or the Sprint event chronologies at this stage of the litigation. Defendants argue that the Court may take judicial notice of these documents as either documents integral to the complaint or incorporated by reference, or as public records. Def. Mem. at 8–9. The Court disagrees.

First, there is no evidence that Plaintiff relied on them when drafting his complaint. Moreover, "[a] document is not integral simply because its contents are highly relevant to a plaintiff's allegations, but only when it is clear that the plaintiff relied on the documents in preparing his complaint." *Williams v. City of New York*, No. 14 Civ. 5123, 2015 WL 4461716, at *2 (S.D.N.Y. July 21, 2015). Additionally, even though some courts have taken judicial notice of a criminal complaint as a public record, the Court declines to do so here because "[its] accuracy and authenticity is explicitly called into question by the plaintiff's allegations." *Azurdia*, 2019 WL 1406647, at *5. Plaintiff's allegations and the allegations in the criminal complaint are directly in tension. *Compare* Compl. ¶¶ 74, 81, 84, *with* ECF No. 30-4. Thus, to consider the criminal complaint, "despite plaintiff's serious allegations about [its] falsity[,]

would 'amount to a premature determination that the arresting officers are more credible than the plaintiff.'" *Azurdia*, 2019 WL 1406647, at *5 (quoting *Williams*, 2015 WL 4461716, at *2).[1]

III.     Federal Claims

A.  False Arrest

Defendants move to dismiss Plaintiff's § 1983 claim of false arrest against the Defendant Officers.  Def. Mem. at 7–10.  To state a claim for false arrest under § 1983, a plaintiff must show that "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement[,] and (4) the confinement was not otherwise privileged."  *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012). The fourth element is not established where the arrest is based on probable cause.  *Id.*

"[P]robable cause to arrest exists if an arresting officer has actual knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).  Defendants contend that the Arresting Officers had probable cause to arrest Plaintiff for harassment, under New York Penal Law § 240.26, or assault, under New York Penal Law § 120.00.  Def. Mem. at 8–9. Defendants rely principally on the Sprint event chronologies and criminal complaint to establish probable cause.  *Id.*  The Court is not persuaded.

1.  Harassment

Under New York law, harassment in the second degree occurs when, "with intent to harass, annoy or alarm another person . . . [a person] strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same . . ."  N. Y. Penal

---

[1] For these same reasons, the Court will not consider the NYPD Omniform Complaint Report attached to Defendants' reply papers.  ECF No. 43-1.

Law § 240.26.  There is a "physical contact element" to harassment.  *People v. Canjura*, 2 N.Y.S.3d 724, 727 (N.Y. App. Div. 2014).  For harassment to be charged, there must be "genuine threats."  *Rafael F. v. Pedro Pablo N.*, 965 N.Y.S.2d 718, 719 (N.Y. App. Div. 2013).

Applying these principles, Defendants have not shown that there was probable cause to arrest Plaintiff for harassment.  Defendants posit that the Sprint event chronologies and the criminal complaint establish that Bruno placed an emergency phone call to 911 and that Plaintiff assaulted Bruno.  Def. Mem. at 8–9.  However, as discussed, the Court shall not consider this evidence at this stage of the litigation.  Assuming the truth of Plaintiff's allegations, he claims that he did not physically threaten or harm Bruno.  Compl. ¶¶ 25–26.  Rather, he alleges that he walked away and called 911 to request emergency assistance.  *Id.* ¶¶ 25–27.  Moreover, Bruno did not sign the criminal complaint.  ECF No. 30-4; *see Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) ("An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubt to the victim's veracity.").  Thus, taking Plaintiff's allegations as true, and drawing all reasonable inferences in Plaintiff's favor, the Court cannot conclude that his arrest for harassment was lawful.

### 2.   Assault

Under New York law, a "person is guilty of assault in the third degree when: (1) [w]ith intent to cause physical injury to another person, he causes such injury to such person or to a third person[,] or (2) [h]e recklessly causes physical injury to another person."  N.Y. Penal Law § 120.00.  Here, Defendants again rely on the Sprint event chronologies and the criminal complaint.  Def. Mem. at 7–8.  Because Plaintiff alleges that he did not physically threaten or harm Bruno, *see* Compl. ¶¶ 25–27, the Court cannot conclude that there was probable cause to arrest Plaintiff for assault.

Accordingly, Defendants' motion to dismiss Plaintiff's false arrest claim is DENIED.

### B.  Malicious Prosecution

Defendants' move to dismiss Plaintiff's malicious prosecution claim under § 1983.  Def. Mem. at 7–10.  To sustain a claim for malicious prosecution under § 1983, a plaintiff must show: "(1) the initiation of a proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4) malice."  *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) (citation and internal quotation marks omitted).  As with false arrest, "the existence of probable cause is a complete defense to a claim of malicious prosecution in New York."  *Id*.  Again, Defendants contend that this claim should be dismissed because the Arresting Officers had probable cause.

Because the Court cannot conclude that probable cause existed for Plaintiff's arrest, Defendants' motion to dismiss this claim is DENIED.

### C.  Qualified Immunity

Defendants argue that, in any event, they did not need actual probable cause because the Arresting Officers are entitled to qualified immunity.  Def. Mem. at 21–22.  Qualified immunity shields public officials performing discretionary functions from federal civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights.  *Bradway v. Gonzales*, 26 F.3d 313, 317–18 (2d Cir. 1994).  A police officer is entitled to qualified immunity from a claim for arrest without probable cause if: (1) it was objectively reasonable for the officer to believe that probable cause existed; or (2) officers of reasonable competence could disagree on whether there was probable cause.  *Zellner v. Summerlin*, 494 F.3d 344, 369–370 (2d Cir. 2007).  The Second Circuit has defined this standard, referred to as "arguable probable cause," as follows:

> Arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well established law. . . . [I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable.

*Cerrone v. Brown*, 246 F.3d 194, 202–03 (2d Cir. 2001) (internal quotation marks and citations omitted). "In the Rule 12(b)(6) context, the facts supporting the defense of qualified immunity must appear on the face of the complaint; even then, a motion to dismiss may be granted on qualified immunity grounds only if the plaintiff fails to plausibly allege a claim for relief." *Sullivan v. City of New York*, No. 14 Civ. 1134, 2015 WL 5025296, at *8 (S.D.N.Y. Aug. 25, 2015). Relying again on the Sprint event chronologies and the criminal complaint, Defendants contend that arguable probable cause existed for Plaintiff's arrest. Def. Mem. at 20–22.

Plaintiff has raised sufficient doubts concerning what the arresting officers knew or should have known at the time of his arrest. "At this procedural juncture, [Defendants] face[] a formidable challenge to prevail on [qualified immunity] grounds, particularly when the arguable probable cause inquiry turns on what the arresting officer knew or did not know regarding the facts that establish justification." *Prevost v. City of New York*, No. 13 Civ. 3760, 2014 WL 6907560, at *4 (S.D.N.Y. Dec. 9, 2014) (internal quotation marks omitted). In light of Plaintiff's allegations that the arresting officers fabricated evidence against him and coerced Bruno into making false statements, *see* Compl. ¶ 74, it is impossible for the Court to discern what the officers knew. Therefore, "there is insufficient evidence at this stage of the case to determine as a matter of law whether [the arresting officers] had arguable probable cause" to arrest Plaintiff. *Alvarez v. County of Orange*, 95 F. Supp. 3d 385, 401–02 (S.D.N.Y. 2015); *see also Conte v. County of Nassau*, No. 06 Civ. 4746, 2010 WL 3924677, at *14 (E.D.N.Y. Sept. 30, 2010).

Accordingly, the individual defendants are not entitled to qualified immunity.

### D.  First Amendment Claim

Plaintiff alleges a First Amendment retaliation claim under § 1983 against the individual defendants.  Compl. ¶¶ 119–25.  To succeed on a First Amendment retaliation claim, a plaintiff must show that: "(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury."  *Dorsett v. City of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013).  "The existence of probable cause [generally] defeats a First Amendment claim premised on the allegation that defendants arrested a plaintiff based on a retaliatory motive."  *Caravalho v. City of New York*, 732 Fed. App'x 18, 23 (2d Cir. 2018); *see also Nieves v. Bartlett*, 139 S. Ct. 1715, 1724 (2019).  A plaintiff may plead injury by showing either that his speech has been adversely affected by government retaliation or that he has suffered some other concrete, non-speech related harm.  *Dorsett*, 732 F.3d at 160.  Here, Defendants argue that this claim should be dismissed because Plaintiff failed to allege the protected speech or activity that resulted in the retaliatory arrest.  Def. Mem. at 10–11.  Defendants also contend that probable cause existed for Plaintiff's arrest.  *Id*.  The Court disagrees.

First, Plaintiff has sufficiently alleged a protected speech or activity.  He claims that the Arresting Officers retaliated against him because he won a lawsuit against the City and Defendants Lunsford, Milfort, Doran, and Clark.  Compl. ¶¶ 58–64.  "[W]here the allegedly protected conduct is the filing of a lawsuit," the rule of a "matter of public concern" applies. *Heusser v. Hale*, 777 F. Supp. 2d 366, 378 (D. Conn. 2011) (quotation marks and citation omitted).  Courts have defined a matter of public concern as circumstances implicating any "political, social, or other concern to the community."  *Id*.  Plaintiff's previous lawsuit addresses "generalized police misconduct."  *Id*. at 379 (citing *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1058 (2d Cir. 1993) ("[A] police department's employment policies . . . are a matter

of public concern.")); Compl. ¶ 78.  Thus, Plaintiff has plausibly alleged that his filing of the previous lawsuit is protected speech.

Second, although a plaintiff must plead "some sort of harm, it is not necessary for that harm to be a chilling of speech in every case."  *Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 431–32 (2d Cir. 2013) (quotation marks and citation omitted).  Here, Plaintiff claims that he was injured by the Arresting Officers' alleged retaliatory conduct, including harm to his reputation, damage to his credibility, and the chilling of his desire to file future lawsuits.  Compl. ¶¶ 91, 110, 123.  Plaintiff, therefore, has adequately alleged that Defendants' conduct caused him some injury.  *Doe v. City of New York*, No. 18 Civ. 670, 2020 WL 108265, at *10 (E.D.N.Y. Jan. 9, 2020).

Finally, for the reasons discussed above, the Court cannot conclude that there was probable cause to arrest Plaintiff.

Accordingly, Defendants' motion to dismiss Plaintiff's First Amendment claim is DENIED.

### E.  Excessive Force

Defendant moves to dismiss Plaintiff's excessive force claim under § 1983.  Def. Mem. at 11–13.  Plaintiff alleges that the Arresting Officers used excessive force when handcuffing him during and after his arrest.  Compl. ¶¶ 159–162.  When considering whether handcuffing constitutes excessive force, a court "is to consider evidence that: (1) the handcuffs were unreasonably tight; (2) the defendants ignored the [arrestee's] pleas that the handcuffs were unreasonably tight; and (3) the degree of injury to the wrists."  *Lynch ex rel. Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008).  This standard reflects the need to balance the "right to use some degree of coercion," including the use of "tight handcuffs to prevent the arrestee's hands from slipping out," with the use of "overly tight handcuffing that

could constitute excessive force." *Dunkelberger v. Dunkelberger*, No. 14 Civ. 3877, 2015 WL 5730605, at *14 (S.D.N.Y. Sept. 30, 2015) (quotation marks and citation omitted).  "Courts in this Circuit have generally found that handcuffing does not suffice for an excessive force claim unless it causes some injury beyond temporary discomfort and bruising." *Case v. City of New York*, 233 F. Supp. 3d 372, 385–86 (S.D.N.Y. 2017) (quotation marks and citation omitted). Defendants argue that Plaintiff has failed to articulate a legally cognizable injury.  The Court agrees.

Although Plaintiff alleges that he pleaded with the Arresting Officers to loosen the excessively tight handcuffs, and that they refused to do so for over twenty minutes, *see* Compl. ¶¶ 42–43, these allegations fall short of stating a claim for relief.  Allegations of temporary and generalized pain are routinely rejected as insufficient.  *Case*, 233 F. Supp. 3d at 386; *Guerrero v. City of New York*, No. 12 Civ. 2916, 2013 WL 5913372, at *6 (S.D.N.Y. Nov. 4, 2013).  And, courts in this district have found allegations of much longer periods of uncomfortable handcuffing insufficient to state a claim.  *Omor v. City of New York*, No. 13 Civ. 2439, 2015 WL 857587, at *8 (S.D.N.Y. Feb. 27, 2015) (four to five hours); *Bender v. City of New York*, No. 09 Civ. 3286, 2011 WL 4344203, at *6 (S.D.N.Y. Sept. 14, 2011).

Accordingly, Defendants' motion to dismiss Plaintiff's federal claim of excessive force is GRANTED.

### F.  Malicious Abuse of Process

Defendants move to dismiss Plaintiff's malicious abuse of process claim under § 1983 against the individual defendants.  Def. Mem. at 13–14.  To state a claim for malicious abuse of process under § 1983, a plaintiff must allege that the defendant: "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act; (2) with intent to do harm without excuse or justification; and (3) in order to obtain a collateral objective that is outside

legitimate ends of process." *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2004) (internal quotation marks, alteration, and citation omitted).

As reflected in this pleading standard, a malicious abuse of process claim requires that a legal process be abused to achieve a collateral objective beyond or in addition to legitimate ends, such as "extortion, blackmail or retribution." *See Bd. of Educ. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Teachers Ass'n, Inc.*, 343 N.E.2d 278, 283 (N.Y. 1975); *see also Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994). That Defendants sought Plaintiff's arrest and prosecution does not constitute such a "collateral objective." *See Hauser v. Bartow*, 7 N.E.2d 268, 270 (N.Y. 1937); *see also Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994). And, "deprivation of . . . liberty, embarrass[ment], inconvenience," and legal expenses are direct, rather than collateral, consequences of arrest that are insufficient to support a malicious abuse of process claim. *Van Houtven v. Adams*, No. 13 Civ. 1964, 2014 WL 1338066, at *3 (S.D.N.Y. Apr. 3, 2014), *aff'd*, 605 Fed. App'x. 37 (2d Cir. 2015). Defendants argue that dismissal is warranted because Plaintiff has failed to identify a collateral objective. The Court disagrees.

Here, Plaintiff claims that the Arresting Officers sought to retaliate against him because of his prior successful lawsuit and to diminish his credibility. Compl. ¶¶ 63–64. These allegations "permit[] the Court to infer that [D]efendants intended to do Plaintiff[] harm, but, an evil motive is not enough to sustain a claim for malicious abuse of process," and does not amount to a collateral objective. *Marmon v. City of New York*, No. 15 Civ. 2017, 2016 WL 916424, at *10 (S.D.N.Y. Mar. 7, 2016); *see also Arrington v. City of New York*, 628 Fed. App'x 46, 49–50 (2d Cir. 2015); *Moritz v. Town of Warwick*, No. 15 Civ. 5424, 2016 WL 3248494, at *5 (S.D.N.Y. June 9, 2016). Plaintiff also claims that the Arresting Officers were retaliating against him in order to curry favor with Defendants Lunsford, Milfort, Doran, and Clark.

Compl. ¶¶ 63–64.  The Court holds that this allegation could plausibly establish a collateral

objective.  *Hauser*, 7 N.E.2d at 269–70.

Accordingly, Defendants' motion to dismiss Plaintiff's abuse of process claim is

DENIED.

G.  Right to a Fair Trial

Defendants' move to dismiss Plaintiff's claim under § 1983 based on a denial of his right

to a fair trial.  Def. Mem. at 14–15.  "When a police officer creates false information likely to

influence a jury's decision and forwards that information to prosecutors, he violates the

accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable

action is redressable in an action for damages under [§ 1983]."  *Ricciuti v. N.Y.C. Transit Auth*.,

124 F.3d 123, 130 (2d Cir. 1997).  A plaintiff need not have actually proceeded to trial in order

to have an actionable § 1983 claim based on the denial of his right.  *Id*. at 127.  Rather, the

allegedly false information must be material such that it "would likely influence the jury if it

arrived at a jury."  *Garnett v. Undercover Officer C0039*, No. 13 Civ. 7083, 2015 WL 1539044,

at *8 (S.D.N.Y. Apr. 6, 2015).  Further, the plaintiff must "suffer[] a deprivation of liberty as a

result."  *Jovanovic v. City of New York*, 486 Fed. App'x 149, 152 (2d Cir. 2012); *see also*

*Schiller v. City of New York*, No. 04 Civ. 10178, 2008 WL 200021, at *10 (S.D.N.Y. Jan. 23,

2008) ("The limiting factor appears to be not whether the plaintiff went to trial but whether the

falsification caused material harm.").

Plaintiff claims that the Defendant Officers violated his right to a fair trial when they

fabricated evidence against him and forwarded it to the District Attorney's Office.  Compl.

¶¶ 198–202.  Specifically, Plaintiff alleges that the Arresting Officers made up the existence of

an unidentified eyewitness and coerced Bruno into making false accusations about Plaintiff.  *Id.*

¶¶ 68–69.  The statements allegedly made by Bruno served as a basis for the criminal complaint

signed by Liebowitz and filed by the District Attorney.  *Id.* ¶¶ 70–71.  Plaintiff also alleges that he suffered a deprivation of liberty after he was arrested and held in various cells until his arraignment and release.  *Id.* ¶¶ 47–48.  Thus, accepting these factual allegations as true and drawing all reasonable inferences in Plaintiff's favor, the Court finds that he has plausibly stated a claim for a denial of a right to a fair trial.  *Henry v. City of New York*, No. 02 Civ. 4824, 2003 WL 22077469, at *4 (S.D.N.Y. Sept. 8, 2003).

Accordingly, Defendants' motion to dismiss Plaintiff's right to a fair trial claim is DENIED.

### H.  Conspiracy Claims

Plaintiff alleges that the individual defendants conspired to interfere with his civil rights and failed to prevent the conspiracy under 42 U.S.C. §§ 1983, 1985, and 1986.  Compl. ¶¶ 224–31.  To prove conspiracy under § 1983, "a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 287 (S.D.N.Y. 2013) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)).  In addition, to state a claim for conspiracy pursuant to 42 U.S.C. § 1985, "a plaintiff must allege: (1) a conspiracy; (2) the purpose of which was to deprive a person or class of persons of equal protection of the laws or of equal privileges or immunities under the law; (3) actions by the defendants in furtherance of the conspiracy; (4) injury to plaintiff's person or property or deprivation of a right as a result of these actions; and (5) class-based discriminatory animus."  *Little v. City of New York*, 487 F. Supp. 2d 426, 441 (S.D.N.Y. 2007).  Finally, § 1986 provides a cause of action against anyone who, "having knowledge that any of the wrongs conspired to be done and mentioned in [§] 1985  are

about to be committed and having power to prevent or aid, neglects to do so." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993).

In order to survive a motion to dismiss, § 1983 and § 1985 conspiracy claims "must provide some factual basis supporting a meeting of the minds, such as that defendants entered into an agreement, express or tacit, to achieve the unlawful end, augmented by some details of time and place and the alleged effects of the conspiracy." *K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 208 (S.D.N.Y. 2013) (internal quotation marks omitted). The plaintiff must also allege overt acts in which the defendants engaged to further the agreement, as well as an actual violation of the rights that defendants were alleged to have conspired to violate. *Id*. at 209.

Here, Plaintiff has failed to sufficiently allege a conspiracy under § 1983. In sum, Plaintiff alleges that: the Defendant Officers (1) conspired with each other and set forth a plan or design to unlawfully arrest, detain, and maliciously prosecute Plaintiff because of his prior successful lawsuit against Lunsford, Milfort, Doran, and Clark, (2) fabricated the existence of an unidentified eyewitness, and (3) coerced Bruno into in making false statements against Plaintiff. Compl. ¶¶ 58, 82–84. But, the complaint does not describe how or when the Defendant Officers entered into the agreement. Plaintiff's conspiracy claim amounts to a vague legal conclusion devoid of facts "tending to show agreement and concerted action," and cannot, therefore, survive a motion to dismiss. *Cox v. City of New Rochelle*, No. 17 Civ. 8193, 2020 WL 5774910, at *7 (S.D.N.Y. Sept. 28, 2020); *see also Demaitre v. City of New York*, No. 18 Civ. 12403, 2020 WL 6048192, at *7 (S.D.N.Y. Oct. 11, 2020).

For this same reason, Plaintiff fails to set forth the necessary elements of a conspiracy claim under § 1985. Unlike a conspiracy claim under § 1983, a claim under § 1985 must be "motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus

behind the conspirators' action.'" *Mian*, 7 F.3d at 1088 (quoting *United Brotherhood of Carpenters v. Scott*, 463 U.S. 825, 829 (1983)).  Plaintiff alleges that the Defendant Officers discriminated against him because he is a white man, and that Bruno is believed to be of Hispanic or Latino descent.  *See* Compl. ¶ 66.  But Plaintiff does not allege any facts that could plausibly show that racial animus motivated the actions of Defendants.  These "[c]onclusory allegations about a protected class do not suffice."  *K.W. ex rel. Brown v. City of New York*, 275 F.R.D. 393, 400 (E.D.N.Y. 2011).  Thus, this claim fails.  Because Plaintiff's allegations of conspiracy under § 1985 are insufficient, Plaintiff's derivative § 1986 claim must also be dismissed.  *Id.*

Accordingly, Defendants' motion to dismiss Plaintiff's federal conspiracy claims is GRANTED.[2]

## I.   Municipal Liability

Defendants move to dismiss Plaintiff's municipal liability claim.  Def. Mem. at 22–25. Plaintiff seeks to hold the City liable for the deprivation of his constitutional rights.  In order for municipal liability to attach for alleged constitutional violations, a plaintiff must prove: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury."  *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91 (1978)).  "The fifth element—the 'official policy' element—can only be satisfied where a plaintiff proves that a 'municipal policy of some nature

---

[2] Because the Court finds that Plaintiff has not sufficiently pleaded the existence of an agreement among Defendants, the Court need not address whether the intracorporate conspiracy doctrine applies here.  The doctrine applies to individual defendants who are employees of the same corporate institution.  *Salgado v. City of New York*, No. 00 Civ. 3667, 2001 WL 290051, at *8 (S.D.N.Y. Mar. 26, 2001).  An exception to the intracorporate conspiracy doctrine exists when individuals pursue "personal interests wholly separate and apart from the entity."  *Bond v. Bd. of Educ.*, No. 97 Civ. 1337, 1999 WL 151702, at *2 (E.D.N.Y. Mar. 17, 1999); *see also Girard v. 94th & Fifth Avenue Corp.*, 530 F.2d 66, 72 (2d Cir. 1976) ("[T]he plaintiff must also allege that they acted other than in the normal course of their corporate duties.").

caused a constitutional tort.'"  *Id*. (quoting *Monell*, 436 U.S. at 691).  "In other words, a municipality may not be found liable simply because one of its employees committed a tort."  *Id*. (citing *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 405 (1997)).

To establish a municipal policy or custom, a plaintiff must allege that: (1) "a particular municipal action *itself* violates federal law, or directs an employee to do so," *Brown*, 520 U.S. at 404; (2) an "authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right," *id*. at 405; (3) unconstitutional "practices [are] so persistent and widespread as to practically have the force of law," *Connick v. Thompson*, 563 U.S. 51, 61 (2011); or (4) a municipality's failure to train its employees "about their legal duty to avoid violating citizens' rights" amounts to "deliberate indifference," *id*.  Moreover, "there must be a 'direct causal link between [the] municipal policy or custom and the alleged constitutional deprivation.'"  *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 531 (S.D.N.Y. 2012) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).  "[T]he mere assertion that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference."  *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (internal quotation marks, alteration, and citation omitted).

Plaintiff seemingly attempts to establish a municipal policy or custom under the third and fourth theories:  that the City's employees have engaged in unconstitutional practices that are so consistent and widespread as to practically carry the force of law, *see* Compl. ¶¶ 92–93, 247–49, and that the City failed to provide adequate training regarding probable cause, reasonable suspicion, and the use of force, *see id*. ¶¶ 101, 250–52.  Defendants argue that Plaintiff has failed to allege sufficient facts to a state claim under either theory.  The Court agrees with Defendants.

1.   Failure to Train

To succeed on a failure to train theory, the complaint must demonstrate "a direct causal link between" the alleged failure to train and the constitutional deprivation. *Triano*, 895 F. Supp. 2d at 531 (internal quotation marks and citation omitted).  Moreover, "a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick*, 563 U.S. at 61 (internal quotation marks and citation omitted).  "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (U.S. 1997)).  "Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Id.*  "The city's 'policy of inaction' in light of notice that its program will cause constitutional violations 'is the functional equivalent of a decision by the city itself to violate the Constitution.'" *Id.* at 61–62 (quoting *Canton*, 489 U.S. at 395).

Generally, "[a] pattern of similar constitutional violations by untrained employees is . . . necessary to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62 (internal quotation marks omitted).  "Policymakers' 'continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the "deliberate indifference"—necessary to trigger municipal liability.'" *Id.* (quoting *Brown*, 520 U.S. at 407).

At the motion to dismiss stage, the Second Circuit applies a three-pronged test to determine whether a plaintiff has demonstrated a municipality's "deliberate indifference" in the context of a failure to train claim. *Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir.

19

1992).  "First, the plaintiff must show that a policymaker knows 'to a moral certainty' that her employees will confront a given situation."  *Id.* at 297 (quoting *Canton*, 489 U.S. at 390 n.10). "Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation."  *Id.*  And, third, "the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights."  *Id.* at 298.  Where all three elements are established a plaintiff has stated a plausible *Monell* claim based on a failure to train.  *Id.*; *see also Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 130 n.10 (2d Cir. 2004).

The Court finds that Plaintiff has not alleged facts which establish the second element. To support his claim, Plaintiff contends that within the last five years, the individual defendants were named in multiple lawsuits "accus[ing] them of committing violations similar or identical to those alleged" in this case.  *See* Compl. ¶¶ 106–107.[3]  Although "citations to pending lawsuits and settlement agreements" may "permit a plausible inference of deliberate indifference," these conclusory allegations do not suffice.  *Case*, 233 F. Supp. 3d at 406.  Indeed, Plaintiff does not specify which defendants, other than Sample, have been involved in previous lawsuits, or how any of these lawsuits are similar to this action.  The Court rejects Plaintiff's request that it consider news articles attached to his complaint.  *See* ECF No. 1-1.  These articles address various types of police misconduct, encompassing topics not clearly relevant to Plaintiff's allegations.  *See e.g.*, ECF No. 1-1 at 1–4, 29–30, 40–41.

---

[3] Plaintiff attempts to incorporate new allegations concerning Defendants' past misconduct into his opposition papers.  Pl. Opp'n at 39, ECF No. 35.  However, the Court declines to consider those allegations here, as they do not appear in the complaint.  *See Peter F. Gaito Architecture, LLC, v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010).

2.   Force of Law

Next, Plaintiff has not alleged facts which establish "a practice so persistent and widespread, or permanent and well settled, as to constitute a custom or usage with the force of law and to imply the constructive knowledge of policymaking officials." *Medina v. City of New York*, No. 19 Civ. 9412, 2020 WL 7028688, at *7 (S.D.N.Y. Nov. 30, 2020).  Under this theory, a plaintiff must show that the local policymaker is "faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007).  "Isolated acts of excessive force by non-policymaking municipal employees are generally not sufficient to demonstrate" a municipal policy or custom.  *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012).  To the extent that Plaintiff is arguing that these prior lawsuits put the City on notice of a pattern or practice of unconstitutional behavior, this argument fails because he does not allege whether these lawsuits were filed before the events at issue here. *See Nicosia v. Town of Hempstead*, No. 16 Civ. 1176, 2017 WL 3769246, at *3 (E.D.N.Y. Aug. 28, 2017).  Of course, there is no "*per se* rule that a [p]laintiff must plead a specific number of unconstitutional violations before his claim becomes viable."  *Medina*, 2020 WL 7028688, at *7. But, Plaintiff's conclusory factual allegations do not plausibly establish this claim.  *Id.*

Accordingly, Defendants' motion to dismiss Plaintiff's municipal liability claim is GRANTED.

J.   Equal Protection Claims

Plaintiff alleges § 1983 and § 1981 claims based on violations of the Equal Protection Clause.  Compl. ¶¶ 214–23.  The Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  "[T]he prototypical equal protection claim involves discrimination against

people based on their membership in a vulnerable class."  *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001).  To establish his § 1983 claim, Plaintiff proceeds under two theories: (1) selective enforcement, and (2) a facially neutral law or policy applied in a discriminatory manner.  Compl. ¶¶ 214–23.

### 1.   Selective Enforcement

The Second Circuit has "recognized that the Equal Protection Clause may be violated by selective enforcement or selective adverse treatment."  *Bush v. City of Utica*, 558 F. App'x 131, 134 (2d Cir. 2014).  "To establish a violation . . . based on selective enforcement, a plaintiff must ordinarily show: (1) [that] the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  *Freedom Holdings Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004) (alteration in original).  "A plaintiff asserting a selective enforcement . . . claim must present evidence of similarly situated comparators."  *Glover v. City of New York*, No. 15 Civ. 4899, 2018 WL 4906253, at *11 (E.D.N.Y. Oct. 9, 2018) (quoting *Church of Am. Knights of the Ku Klux Klan v. Kerik*, 356 F.3d 197, 210 (2d Cir. 2004)).  To be "'similarly situated,' the individuals with whom [he] attempts to compare [him]self must be similarly situated in all material respects."  *Sumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997) (citation omitted).

Plaintiff does not articulate the impermissible considerations that underlie his equal protection claim.  He appears to allege that he was treated differently from Bruno because Plaintiff is a white male, and because of Plaintiff's previously filed lawsuit.  Compl. ¶ 89.  Thus, the Court understands Plaintiff to be proceeding on the theory that any selective treatment was

based on the impermissible considerations of race and national origin, or malicious or bad faith intent to injure a person.

Plaintiff has sufficiently pleaded selective treatment based on the impermissible consideration of malicious or bad faith intent to injure a person.  The Court rejects Defendants' contention that Plaintiff has failed to establish a "similarly situated comparator" at this stage of the litigation.  Def. Mem. at 15–16.  Here, "[p]laintiff must identify comparators whom a prudent person would think were roughly equivalent."  *Tower Props. LLC v. Vill. of Highland Falls*, No. 14 Civ. 4502, 2015 WL 4124499, at *8 (S.D.N.Y. July 7, 2015) (quotation marks, alterations, and citation omitted).

Taking the facts in the complaint as true, Plaintiff has sufficiently alleged that he and Bruno were "roughly equivalent."  *Id.*  First, Plaintiff claims that he was precluded from filing a cross-complaint against Bruno, that he was directed to apologize and shake hands with Bruno when the officers arrived, that he and Bruno had both accused each other of criminal conduct as memorialized in cross complaints, and that both were present when the officers arrived.  Compl. ¶¶ 78–89, 214–223.  Yet, Plaintiff was arrested, and Bruno was not.  *Id.*  Thus, "it is plausible that a jury could ultimately determine" that Plaintiff and Bruno were similarly situated.  *Panzella v. City of Newburgh*, 231 F. Supp. 3d 1, 8 (S.D.N.Y. 2017).

Moreover, Plaintiff has plausibly alleged that the selective treatment—the allegedly unlawful arrest—was based on a malicious or bad faith intent to retaliate against Plaintiff for his successful lawsuit.  Compl. ¶¶ 78–89.  A plaintiff can satisfy this standard by "simply showing that defendants acted out of personal dislike of the plaintiff[]."  *Doe v. Vill. of Mamaroneck*, 462 F. Supp. 2d 520, at 554 (S.D.N.Y. 2006).  Plaintiff alleges that Sample was aware of Plaintiff's prior successful lawsuit, that Sample and Liebowitz knew Defendants Lunsford, Milfort, Doran, and Clark, and that Sample was assigned to the 75th NYPD precinct at the same time as

23

Lunsford and Milfort.  Compl. ¶¶ 58, 60–62, 80.  Moreover, the Second Circuit has recognized that "the issue of intent underlying an equal protection claim generally belongs to the trier of fact." *Savino v. Town of Se.*, 983 F. Supp. 2d 293, 300 (S.D.N.Y. 2013), *aff'd*, 572 F. App'x 15 (2d Cir. 2014).  Thus, Plaintiff has plausibly alleged that he was unlawfully subjected to selective treatment based on Sample and Liebowitz's awareness of Plaintiff's prior successful lawsuit and Sample's relationship with Lunsford and Moran as coworkers.

However, Plaintiff's selective enforcement claim based on race or national origin fails.  Although Plaintiff states that he is white, and that Bruno is believed to be of "Hispanic or Latino" descent, Compl. ¶ 66, there are no allegations which suggest that race or national origin played a role in Plaintiff's selective treatment.

2.   Facially Neutral Law or Policy Applied in a Discriminatory Manner

In addition to a selective enforcement claim, "[t]here are several ways for a plaintiff to plead intentional discrimination that violates the Equal Protection Clause."  *Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 2000).  A plaintiff may rely on: (1) a law that makes classifications specifically based on a protected class, including race; (2) "a facially neutral law or policy that has been applied in a discriminatory manner"; or (3) a facially neutral policy that "has an adverse effect and was motivated by discriminatory animus."  *Pyke v. Cuomo*, 258 F.3d 107, 110 (2d Cir. 2001) (internal quotation marks and alteration omitted).  Plaintiff is correct that these theories do not require the identification of similarly situated comparators.  *Id.* at 108–09; *see* Pl. Opp'n at 28, ECF No. 35.  A plaintiff proceeding under this theory must, however, substantiate his "claim that [the defendants' conduct] was motivated by racial discrimination." *Glover*, 2018 WL 4906253, at *16 (citing *Pyke*, 258 F.3d at 110) (alteration in original).  As discussed above, Plaintiff has failed to allege facts that could support a claim that the Arresting Officers were motivated by racial discrimination.

### 3.   42 U.S.C. § 1981 Claim

Plaintiff also brings a claim under 42 U.S.C. § 1981.  To establish a claim under 42 U.S.C. § 1981, plaintiffs must allege facts supporting the following elements: (1) plaintiffs are members of a racial minority; (2) defendants' intent to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities.  *See Mian*, 7 F.3d at 1087. Those enumerated activities include the rights "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property."  42 U.S.C. § 1981(a).  Because Plaintiff has failed to allege facts which demonstrate that Defendants intended to discriminate based on race or national origin, this claim must also fail.

Accordingly, Defendants' motion to dismiss is DENIED to the extent that Plaintiff proceeds on an equal protection claim under a theory of selective enforcement based on the impermissible consideration of malicious or bad faith intent to injure, and GRANTED with respect to Plaintiff's other equal protection claims.

### K.   Other Federal Claims

Although Defendants move to dismiss the complaint in its entirety, *see* Def. Mem. at 1, they fail to address Plaintiff's unlawful search and seizure claim under § 1983, his false imprisonment claim under § 1983, and his failure to intervene claim under § 1983, *see* Compl. ¶¶ 134–140, 148–152, 236–239.  Because Defendants do not challenge these causes of action specifically, the Court shall not consider them at this stage of the litigation.  *Univ. Ent. Events, Inc. v. Classic Air Charter, Inc*., No. 15 Civ. 1104, 2016 WL 951534, at *4 n.2 (S.D.N.Y. Mar. 8, 2016).

Accordingly, Defendants' motion to dismiss these claims is DENIED.

IV.    State Law Claims

"In a federal court, state notice-of-claim statutes apply to state-law claims."  *Packard v.*

*City of New York*, No. 15 Civ. 7130, 2017 WL 11580855, at *2 (S.D.N.Y. July 17, 2017)

(internal quotation marks, alteration, and citation omitted).  New York General Municipal Law §

50-e provides that a notice of claim must be filed against the City before it can be sued "for torts

arising out of the conduct of police officers in the course of their employment with the

municipality."  *Mejia v. City of New York*, 119 F. Supp. 2d 232, 256–57 (E.D.N.Y. 2000).  At the

pleading stage, plaintiffs must affirmatively plead compliance with the notice-of-

claim requirement.  *Davidson v. Bronx Mun. Hosp.*, 473 N.E.2d 761, 762–63 (N.Y. 1984) (per

curiam) ("Plaintiff must not only plead in his complaint that he has served a notice of claim, but

must also allege that the notice was served at least 30 days prior to commencement of the action

and that in that time defendants neglected to or refused to adjust or to satisfy the claim.").  "[A]

plaintiff must file a notice of claim within 90 days after [his] claim accrues."  *Russell v.*

*Westchester Cmty. Coll.*, No. 16 Civ. 1712, 2017 WL 4326545, at *5 (S.D.N.Y. Sept. 27, 2017)

(citing N.Y. Gen. Mun. Law § 50-e(1)(a)).

Defendants argue that Plaintiff's state law claims against Defendants should be dismissed

because Plaintiff failed to affirmatively plead that he filed a notice of claim against Defendants.[4]

Def. Mem. at 26–27.  The Court agrees.  "The notice of claim requirements are strictly

construed, and a plaintiff's 'failure to comply with the mandatory New York statutory notice-of-

claim requirements generally results in dismissal of his claims.'"  *Smith v. City of New York*, No.

---

[4] In Plaintiff's opposition papers, he states that he complied with the statutory requirements set forth in New York General Municipal Law §§ 50-e, 50-i, and 50-h, by serving the City of New York, via the office of the Comptroller, with notice of his state law claims and by appearing for his oral examination, under § 50-h.  Pl. Opp'n at 39–40. Plaintiff fails, however, to indicate when he served the notice of claim.  *Id.*  Defendants represent to the Court, without citation, that Plaintiff did not file a notice of claim until January 25, 2019.  Def. Reply at 14–15, ECF No. 42.

04 Civ. 3286, 2010 WL 3397683, at *15 (S.D.N.Y. Aug. 27, 2010) (citation omitted), *aff'd sub nom. Smith v. Tobon*, 529 F. App'x 36 (2d Cir. 2013).  Because Plaintiff failed to plead that he filed a notice claim with respect to his state law claims, those claims are dismissed.  *El v. City of New York*, No. 14 Civ. 9055, 2015 WL 1873099, at *8 (S.D.N.Y. Apr. 23, 2015).

Accordingly, Defendants' motion to dismiss Plaintiff's state law claims is GRANTED without prejudice to replead.

V.      Claims Against Defendants Lunsford, Milfort, Doran, and Clark

The Court finds it appropriate to dismiss the claims against Defendants Doran, Lunsford, Milfort and Clark from this action.  The complaint fails to allege facts plausibly showing the personal involvement of these defendants in the alleged constitutional violations.  *See Spavone v. N.Y. State Dep't of Corr. Serv*., 719 F.3d 127, 135 (2d Cir. 2013).  It is well settled that "group pleading," which "fail[s] to differentiate as to which defendant was involved in the alleged unlawful conduct," is insufficient to state a claim under § 1983.  *Myers v. Moore*, 326 F.R.D. 50, 60 (S.D.N.Y. 2018).  Thus, a plaintiff must make "specific factual allegations" against each defendant.  *Thomas v. Venditto*, 925 F. Supp. 2d 352, 363 (E.D.N.Y. 2013).

Plaintiff has failed to do so here.  Plaintiff does not allege that these officers were present when he was arrested.  Rather, he makes conclusory allegations concerning their involvement, including that they "improperly influenced," "conspired with," and "committed . . . overt acts in furtherance of . . . [the] conspiracy" with the Arresting Officers.  *See, e.g.*, Compl. ¶¶ 73, 82–83. These general allegations about their involvement fail to show "precisely who did what and how such behavior is actionable under the law."  *Gonzalez v. Yepes*, No. 19 Civ. 267, 2019 WL 2603533, at *7–8 (D. Conn. June 25, 2019).

Accordingly, Plaintiff's claims against Doran, Lunsford, Milfort, and Clark are DISMISSED.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss the complaint is GRANTED in part and DENIED in part.  Accordingly:

- Defendants' motion to dismiss Plaintiff's first, third, fifth, seventh, ninth, eleventh, thirteenth, fifteenth, eighteenth, and twentieth causes of action is GRANTED without prejudice to replead.

- Defendant's motion to dismiss Plaintiff's second, fourth, sixth, tenth, twelfth, fourteenth, sixteenth (to the extent that he is proceeding under a selective enforcement theory based on a malicious or bad faith intent to injure), and nineteenth causes of action is DENIED.

- Defendant's motion to dismiss Plaintiff's eighth, seventeenth, and twenty-first causes of action is GRANTED.

- Plaintiff may file an amended complaint by **April 26, 2021**.

    The Clerk of Court is directed to terminate the motion at ECF No. 28.

    SO ORDERED.

Dated: March 31, 2021
     New York, New York

_____
ANALISA TORRES
United States District Judge